UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EUGENE SCALIA, Secretary of Labor,
United States Department of Labor,

Plaintiff,

v.

USPACK LOGISTICS, LLC, and FRANK
POWELL,

Defendants.

Civil Action No. 4:20-cv-40009

Injunctive Relief Sought

COMPLAINT

1.      Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor

(the "Secretary"), brings this action because Defendant USPack Logistics, LLC ("USPack") and

USPack's Chief Operating Officer Frank Powell have misclassified their courier drivers as

independent contractors and, therefore, deprived those drivers of their proper wages under the

Fair Labor Standards Act of 1938 (the "FLSA" or "Act").

2.      The Secretary seeks to enjoin USPack and Powell from violating the provisions of

Sections 6, 7, 11, 15(a)(2), and 15(a)(5) of the Act, 29 U.S.C. §§ 206, 207, 211, 215(a)(2), and

215(a)(5), and to recover wages that Defendants failed to pay their employee drivers as well as

liquidated damages, pursuant to the provisions of Sections 15(a)(2), 15(a)(5), 16(c), and 17 of the

FLSA, 29 U.S.C. §§ 215(a)(2), 215(a)(5), 216(c), and 217.

3.      The time period covered by this Complaint is May 16, 2017 to July 15, 2018.

1

<u>Jurisdiction and Venue</u>

4.    Jurisdiction of this action is conferred upon this Court by Section 17 of the Act, 29 U.S.C. § 217, and by 28 U.S.C. § 1331.

5.    Venue is proper in the United States District Court for the District of Massachusetts because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

<u>The Parties</u>

*Plaintiff Secretary of Labor*

6.    Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor, is vested with the authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages, and is the proper plaintiff for this action.

*Defendant USPack*

7.    USPack is a limited liability corporation that did business in Shrewsbury, Massachusetts, within the jurisdiction of this Court.

8.    USPack was engaged at that location in Shrewsbury and elsewhere in providing courier services for Omnicare, Inc., including Omnicare ESC, LLC, d/b/a Omnicare of Central Massachusetts (collectively referred to this in this Complaint as "Omnicare").

9.    USPack provided these courier services pursuant to a multistate contract between USPack and both CVS Pharmacy, Inc. and Omnicare, Inc., which was in effect from February 6, 2017 through February 5, 2022 or the termination of the contract (the "USPack–Omnicare Contract").

10.     Pursuant to the USPack–Omnicare Contract, USPack provided courier services to Omnicare for the delivery of medications, pharmaceuticals, and medical supplies from Omnicare's facility located at 574-B Hartford Turnpike, Shrewsbury, Massachusetts, (the "Shrewsbury Facility") to customers and clients of Omnicare, consisting of a number of nursing homes and rehabilitation facilities in Massachusetts.

11.     During the period covered by this Complaint, USPack employed approximately 64 courier drivers listed in the attached Exhibit A who worked at or were associated with the Shrewsbury Facility under the USPack–Omnicare Contract (this specific group of courier drivers will be referred to in this Complaint as the "Drivers").

*Defendant Frank Powell*

12.     Defendant Frank Powell was the Chief Operating Officer of USPack, which conducted business in Massachusetts, including at the Shrewsbury Facility.

13.     On March 13, 2017, Powell signed the USPack–Omnicare Contract on behalf of USPack.

14.     The USPack–Omnicare Contract signed by Powell states that USPack was responsible for:

a.     Managing and directing the transportation functions and the Drivers associated with the Shrewsbury Facility;

b.     Providing courier services to Omnicare; and

c.     Determining the methods, means, and manner of performing the pickup and delivery of the products that Omnicare placed in USPack's custody and control.

3

15.     Powell committed USPack to provide courier services under the USPack–Omnicare Contract, including deliveries associated with the Shrewsbury location.

16.     Powell had control and authority over the compensation of Drivers. Powell communicated with Omnicare via email regarding USPack properly compensating Drivers.

17.     Powell also had control and authority over how Drivers performed their work. Powell communicated to Omnicare in an email that he was working to provide additional on-site support to Omnicare to monitor how Drivers collected products for delivery and scanned those products. Powell further communicated in that email that he was working to provide additional support to Omnicare to monitor Drivers' departure times and their completion of routes.

18.     As Chief Operating Officer for USPack, Powell has acted directly and indirectly in the interest of USPack in relation to the Drivers, and therefore is and has been an employer of said employees within the meaning of the Act. *See* 29 U.S.C. § 203(d).

<u>Defendants Are an Enterprise Engaged in Commerce</u>

19.     At all times covered by this Complaint, Defendants USPack and Powell were an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r), as they engaged in related activities performed through unified operation or common control for a common business purpose.

20.     Defendants employed Drivers working at or from the Shrewsbury Facility in the activities of said enterprise, which was engaged in commerce or in the production of goods for commerce, including having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

4

21.     The Drivers delivered medication, pharmaceuticals, and other medical supplies under the USPack–Omnicare Contract, which is a multi-state contract.

22.     These medications, pharmaceuticals, and other medical supplies had been moved in or produced for commerce.

23.     Defendants' enterprise has had an annual gross volume of sales made or business done in an amount not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

24.     Defendants' employees have been employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

<u>The Drivers Covered by this Complaint</u>

25.     The allegations and claims in this Complaint are specifically limited to the Drivers, as defined above and as listed in the attached Exhibit A.

26.     This Complaint does not encompass any time period outside of the period between May 16, 2017 and July 15, 2018.

27.     This Complaint does not cover any driver or any delivery work performed by any driver working for USPack that was not associated with the Shrewsbury Facility, including any work that any Driver listed on the attached Exhibit A may have performed where such work was not associated with the Shrewsbury Facility.

<u>Defendants' Wage and Hour Practices</u>

*Defendants Misclassified Drivers as Independent Contractors*

28.     Defendants misclassified as independent contractors approximately 64 Drivers who were working at or from the Shrewsbury Facility as couriers under the USPack–Omnicare Contract.

29.     Defendants' failure to properly classify those Drivers as employees deprived the Drivers of their rights under the FLSA. Defendants should have treated the Drivers as employees under the FLSA, which would have resulted in the Drivers being covered by, among other things, the FLSA's minimum wage and overtime provisions, *see* 29 U.S.C. §§ 206 and 207.

30.     The Drivers were economically dependent on Defendants, and were not in business for themselves.

31.     USPack asserted control over the Drivers and their work environment. For example:

    a.   USPack often controlled the assignment of routes and the scheduling of the Drivers' hours, mandating set days and hours for many Drivers.

    b.   USPack required some Drivers to make their deliveries in a particular order.

    c.   USPack required Drivers to handle pharmaceutical deliveries in a specific manner, such as keeping narcotics in sealed containers and filling out and returning a form to the Shrewsbury Facility to confirm delivery.

    d.   USPack usually required Drivers to return to the distribution facility at the end of their routes.

    e.   Drivers often could not bid for or choose their routes or negotiate their pay with USPack.

    f.   USPack did not allow Drivers to hire other people to make deliveries or have anyone in the car with them when making deliveries.

    g.   USPack required many Drivers to wear a company shirt.

    h.   USPack recruited, interviewed, trained, hired, and fired Drivers.

32.     The USPack–Omnicare Contract further shows the control that Defendants asserted over the Drivers and their work. For example, the USPack–Omnicare Contract states that:

    a.   USPack was solely responsible for the supervision, direction, and instruction of the Drivers.

    b.   USPack was solely responsible for managing and directing the transportation functions and the Drivers.

    c.   USPack was solely responsible for determining the methods, means, and manner of performing the pickup and delivery of the products that Omnicare placed in USPack's custody and control.

    d.   USPack was solely responsible for the human resource functions related to the Drivers.

    e.   USPack was required to have appropriate on-site supervision to direct, instruct, and manage the Drivers.

    f.   USPack was responsible for training the Drivers.

g.  USPack was required to carry and maintain workers' compensation insurance.

h.  USPack was solely responsible for the solicitation, engagement, hiring, and supervision of the Drivers.

i.  The Drivers were required to follow a specific route structure, and routes could be changed only after USPack communicated with Omnicare about any such changes.

j.  The Drivers had to deliver packages within certain time windows.

k.  The Drivers were required to be uniformed and have a badge.

l.  The Drivers had to return to the Shrewsbury Facility at the end of their routes.

m.  USPack was not allowed to subcontract or transfer its obligations under the USPack–Omnicare Contract without prior written consent from Omnicare; any subcontract by USPack that did not have such prior written consent was void.

33.  Drivers often worked exclusively for USPack.

34.  USPack did not require Drivers to have any specialized skills. In this regard, USPack only required that Drivers have a vehicle, a license, a high school diploma, and that they undergo a background check and drug test. USPack did not require Drivers to have a special driver's license or experience.

35.  The Drivers were integral to USPack's business of providing delivery services. USPack's business associated with the Shrewsbury Facility could not have existed without the

Drivers, as USPack contracted with Omnicare to provide courier services under the USPack–Omnicare Contract.

36.     The Drivers did not have an opportunity for profit or loss in their jobs with USPack, as illustrated by the following:

      a.   Drivers largely did not have an opportunity to negotiate their pay rates.

      b.   USPack often dictated the order in which Drivers had to make deliveries, thereby limiting Drivers' ability to attempt to maximize the amount of money they earned from making deliveries for USPack.

      c.   USPack determined the schedules that many Drivers would work, again limiting any potential for profit or loss.

      d.   Drivers did not have the opportunity to exercise managerial skill that would allow them to increase their profits or risk losing money.

37.     The Drivers' investments in their vehicles were far less than USPack's investments in the infrastructure related to the company's delivery business. USPack invested in the personnel and infrastructure to obtain the USPack–Omnicare Contract, to manage the execution of and performance under that contract, and to have the technology necessary to track and document the delivery of medications under the contract.

38.     A large portion of the Drivers who worked for USPack during the time period covered by this Complaint also drove as couriers for the company that had the delivery contract with Omnicare prior to USPack, and those couriers also drive for the company that took over the Omnicare delivery contract after USPack.

*Defendants Failed to Pay Drivers the FLSA Minimum Wage*

39.     Defendants paid approximately 64 Drivers wages at rates less than the applicable minimum wage under the FLSA.

40.     Defendants paid Drivers various rates per delivery rather than an hourly wage.

41.     Defendants also usually did not pay any amount to Drivers for the time they spent waiting at the Shrewsbury Facility to receive products for delivery. Many Drivers often waited at the Shrewsbury Facility between approximately 45 minutes and two hours to receive products for delivery.

42.     Defendants required the Drivers to pay for gasoline, upkeep on their vehicles, and some Drivers had to pay a fee for a handheld scanner to track deliveries and the mileage that they drove.

43.     USPack deducted various fees from Drivers' pay, such as administrative, technology, occupational accident insurance, and set-up fees.

44.     Examples of workweeks when Defendants paid Drivers less than the minimum wage include the following:

        a.   For the workweek ending May 4, 2018, after deducting from a Driver's pay an administrative fee, a technology fee, an occupational accident insurance fee, and the Internal Revenue Service mileage rate, USPack paid one Driver approximately $3.87 per hour.

        b.   For the workweeks ending October 13, 2017 and October 27, 2017, after deducting all the above-mentioned fees, USPack paid a Driver approximately $2.05 per hour and $6.79 per hour, respectively.

10

*Defendants Failed to Pay Drivers the Required Overtime Premium*

45.     Defendants failed to properly compensate approximately 56 Drivers for overtime hours worked. Specifically, USPack paid those Drivers at rates less than one and one-half times the regular rates at which those Drivers were employed.

46.     Examples of workweeks when Defendants failed to pay Drivers the required overtime premium include the following:

> a.   One Driver worked approximately the following hours during the workweeks ending on the following dates: November 10, 2017—42.79 hours; November 24, 2017—42.53 hours; December 1, 2017—62.08 hours; December 8, 2017—54.51 hours; December 22, 2017—46.64 hours; and January 5, 2018—41.75 hours. For those workweeks, Defendants did not compensate that Driver at one and one-half times the regular rate at which the driver was employed.

> b.   Another Driver worked approximately the following hours during the workweeks ending on the following dates: April 27, 2018—46.85 hours; May 4, 2018—53.04 hours; May 11, 2018—52.02 hours; and May 18, 2018—60.02 hours. For those workweeks, Defendants did not compensate that Driver at one and one-half times the regular rate at which the driver was employed.

*Defendants Failed to Maintain Records Required by the FLSA*

47.     Defendants violated the FLSA by failing to make, keep, and preserve adequate and accurate records for Drivers.

48.     Specifically, Defendants' records failed to show adequately and accurately, among other things, any record of hours worked by the Drivers.

## COUNT ONE
### Violation of Sections 6 & 15(a)(2) of the FLSA—Failure to Pay Minimum Wage

49.     The Secretary incorporates by reference and re-alleges all of the foregoing allegations in this Complaint.

50.     Defendants have violated the provisions of Sections 6 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215(a)(2), by employing and paying Drivers wages at rates less than the applicable minimum wage under the FLSA.

51.     Therefore, Defendants are liable for minimum wage compensation owed to Drivers listed in the attached Exhibit A and an equal amount of liquidated damages under Section 16(c) of the FLSA, 29 U.S.C. § 216(c).

## COUNT TWO
### Violation of Sections 7 & 15(a)(2) of the Act—Failure to Pay Overtime

52.     The Secretary incorporates by reference and re-alleges all of the foregoing allegations in this Complaint.

53.     Defendants violated the provisions of Sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing employees for workweeks longer than forty hours without compensating them at rates not less than one and one-half times the regular rates at which they were employed for hours worked in excess of forty hours in such workweeks.

54.     Therefore, Defendants are liable for overtime compensation owed to certain of the employees listed in the attached Exhibit A and an equal amount of liquidated damages under Section 16(c) of the FLSA, 29 U.S.C. § 216(c).

## COUNT THREE
## Violation of Sections 11(c) & 15(a)(5) of the Act—Failure to Make & Keep Records

55.    The Secretary incorporates by reference and re-alleges all of the foregoing allegations in this Complaint.

56.    Defendants failed to keep true and accurate records of the hours that each of their non-exempt employees worked in violation of Section 11 of the FLSA, 29 U.S.C. § 211, and the regulations thereunder, specifically 29 C.F.R. Part 516.

### PRAYER FOR RELIEF

Throughout the period covered by this Complaint, Defendants violated the aforesaid provisions of the Act as alleged. WHEREFORE, cause having been shown, the Secretary prays for judgment against Defendants as follows:

1.    For an Order pursuant to Section 17 of the Act, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with them, from prospectively violating the Act, including Sections 6, 7, 11, 15(a)(2), and 15(a)(5), 29 U.S.C. §§ 206, 207, 211, 215(a)(2), and 215(a)(5);

2.    For an Order pursuant to Section 16(c) of the Act, 29 U.S.C. § 216(c), holding Defendants liable for unpaid back wages found due to Defendants' employees listed in the attached Exhibit A, plus liquidated damages equal in amount to the unpaid compensation found due. Alternatively, in the event liquidated damages are not awarded, the Secretary prays for an order pursuant to Section 17 of the Act, 29 U.S.C. § 217, enjoining and restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with them, from withholding payment of unpaid back wages found due to Defendants'

13

employees, and prejudgment interest computed at the underpayment rate established by the

Secretary of the Treasury pursuant to 26 U.S.C. § 6621;

     3.     Awarding the Secretary the costs of this action; and

     4.     Granting such other and further relief as may be necessary and appropriate.

<div style="margin-left:50%">

Kate S. O'Scannlain
Solicitor of Labor

Maia S. Fisher
Regional Solicitor

/s/Susan G. Salzberg
Susan G. Salzberg
Senior Trial Attorney
salzberg.susan@dol.gov
MA BBO No. 556437

U.S. Department of Labor
Attorneys for Plaintiff

Post Office Address:
JFK Federal Building—Room E-375
Boston, Massachusetts 02203
TEL: (617) 565-2500
FAX: (617) 565-2142
Boston Regional Office

</div>

DATED: January 23, 2020